United States District Court
Southern District of Texas
**ENTERED**
May 05, 2020
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MONICA GUERRERO ET AL., | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Civil Action No. 1:18-cv-182 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| Defendant | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of the Motion for Summary Judgment filed by Defendant Brownsville Independent School District (hereinafter, BISD's "Motion" or "Motion for Summary Judgment").  Dkt. No. 28.  For the reasons provided below, it is recommended that the Court **GRANT** BISD's Motion for Summary Judgment and **DIRECT** the Clerk of Court to **CLOSE** this case.


## I.  Jurisdiction

The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.


## II.  Procedural History

BISD filed its instant Motion for Summary Judgment with supporting documents on January 18, 2020.  Dkt. No. 28; Dkt. Nos. 28-1 through 28-14.

Plaintiffs, Monica Guerrero, and her son, Alec Austin Gonzalez, filed their "Response to Defendant's Motion for Summary Judgment" (hereinafter, Plaintiffs' "Response"), along with supporting documents, on February 10, 2020.  Dkt. No. 29; Dkt. Nos. 29-1 through 29-40.  BISD has not filed a reply to Plaintiffs' Response.

### III.  Plaintiffs' Allegations

The gravamen of Plaintiffs' Complaint is that BISD violated their civil rights by failing to prevent one of its teachers, Priscilla Casas, from sexually harassing, assaulting, and statutorily raping Alec Austin Gonzalez (hereinafter, "Alec") while he was a minor student at BISD.  Dkt. No. 1 at 2-13; *see also* Dkt. No 29 at 7-22.  More specifically, Plaintiffs allege that:

1.  In November of 2016, Alec was a junior at Hanna High School ("HHS"), where Priscilla Casas taught history.  Dkt. No. 1 at 3; Dkt. No. 29 at 8.  Alec was 17 at the time, and Casas was 29.  *See* Dkt. No. 29-3 at 2, 6.  Before the 2016-2017 school year, Casas had been on a probationary contract for two years.  Dkt. No. 29 at 8.  Her "T-Tess Summative" reviews showed extreme deficiencies.  *Id*. at 17  The 2016-2017 school year was her first year teaching pursuant to a "full-term contract."  *Id*.

2.  On November 9, 2016, Alec went to Casas's classroom after school with a friend to pick up some assignments.  Alec knew Casas from the previous year.  *Id*.  During that meeting, or soon thereafter, Casas gave Alec her phone number.  Casas was very friendly with Alec.  He had just experienced a breakup with his girlfriend and Casas encouraged him to confide in her.  *Id*.

3.   Shortly thereafter, Casas and Alec began communicating on the phone and through various social media sources.  *Id*.  Casas and Alec would also see each other almost daily during the lunch hour in Casas's classroom.   Other students and teachers noticed that they were overtly friendly, and that they would hug and massage each other.  Casas and Alec's inappropriate relationship soon progressed to kissing, heavy petting, and sex, both on and off campus.  Casas told Alec that she loved him and wished she could leave her husband for him.  *Id*.

4.   Casas and Alec also exchanged nude photos of themselves through their phones.  Dkt. No. 1 at 3; Dkt. No. 29 at 8-9.  Once, while having sex in Casas's classroom, another teacher walked in and saw them.  Dkt. No. 1 at 4; Dkt. No. 29 at 9. This teacher, Mr. Diego Garcia, was friends with Casas.  He asked them what they were doing, and immediately left the room.  Despite observing Casas and Alec, he did not report Casas.  *Id*.

5.   Another student heard about the incident and reported it to HHS's principal.  *Id*.  Teachers were aware of the inappropriate relationship between Casas and Alec but stayed silent.  Dkt. No. 29 at 9.  "[A]ll the students knew what was going on."   *Id*.   The teachers and students also knew that Casas was having an inappropriate relationship with two other students "G.C." and "D.R."  *Id*.  at 9, 21.  Nothing was done because there was a culture, pattern, and practice of teachers assaulting students at BISD, and otherwise engaging in inappropriate relationships with them.  *Id*. at 11.  In fact, rather than stop Casas's sexting, Vice Principal Ramos

instructed one of Casas's victims to delete Casas's texts. *Id.* at 21 (stating that Ramos instructed G.C. to delete Casa's texts).

6.  Casas had also engaged in inappropriate relationships with her students in the past, and BISD was knew about this history. *Id.* at 8.  More specifically, BISD investigated Casas in May of 2014 for "her inappropriate relationships with male students and the name calling and 'slut shaming' of their girlfriends." *Id.* at 21. BISD's investigation, either did not conclude, or did not result in disciplinary measures.  Casas's personnel file does not indicate that BISD required her to complete any additional training, nor does it indicate that it took any other remedial steps such as requiring supervision.  Instead, BISD's Board of Trustees voted to give Casas a full-term contract. *Id.*

7.  From the beginning, BISD mishandled the investigation into Casas's abuse of Alec.  Dkt. No. 1 at 3-8; Dkt. No. 29 at 9-11.  Detective Patrick Gabbert, with the BISD Police, told Alec to hand over his phone immediately.  He insinuated that Alec was in trouble and had broken the law.  He subjected him to questioning without legal representation and did not give his phone back.  Monica Guerrero told Gabbert to get a warrant due to this insinuation. *Id.*  BISD did not inform the Department of Family Protective Services (hereinafter, "DFPS" or "CPS") "within the required reporting time, pursuant to law and local/legal policy."  Dkt. No. 29 at 9-10.

8.  After BISD began its investigation and placed Casas on administrative leave, she continued to communicate with Alec, making it seem like they would still have a relationship in the future. *Id.* at 10.  She told Alec not to reveal their

relationship because she could lose her job and her husband. Dkt. No. 1 at 4. At school, students began to ridicule Alec because Casas's inappropriate relationship with him had become public knowledge. Dkt. No. 29 at 10. The students pointed and laughed at him constantly. He began missing classes and losing weight. He tattooed his body and face and became increasingly depressed and suicidal. He found out that he was not the first student Casa had slept with. He felt that Casas had taken advantage of him, assaulted, and raped him. This, in addition to BISD's "violations," caused him to feel extreme guilt and embarrassment. School became unbearable and he dropped out. *Id.*

9.   After placing Casas on administrative leave, BISD did not contact Alec to check on his welfare. *Id.* at 10. Neither the principal, nor the assistant principal, returned Monica Guerrero's calls. BISD refused to explain why they were not pursuing a criminal case against Casas. *Id.* BISD additionally refused to keep Guerrero informed about the results of its investigation and the nature of Casas's punishment. In fact, Guerrero did not get any answers until she filed the instant lawsuit. *Id.* at 11.[1]

---

[1]   Perhaps for this reason, Plaintiffs' pleadings make certain factual allegations that are unsupported by the record evidence. For example, Plaintiffs suggest that the DFPS never contacted them, and that BISD never reported Casas's abuse of Alec to DFPS. Dkt. No. 1 at 5. However, Alec admitted in his deposition that he did not know if BISD reported Casas. *See* Dkt. No 29-30 at 22. The evidence submitted indicates that BISD Police Officer Patrick Gabbert reported the abuse to DFPS, but that when DFPS tried to interview Alec, Guerrero did not want anyone to speak to Alec, and Alec refused to speak because he did not have Guerrero and an attorney present. Dkt. No. 28-5 at 2; Dkt. No. 28-4 at 4; Dkt. No. 29-30 at 8, 19. Further, Plaintiffs accuse Vice Principal Ramos of instructing a student to delete the texts he received from Casas. *See* Dkt. No. 29 at 21. Plaintiffs cites numerous documents to support this claim. *Id.* at 22 (citing Dkt. Nos. 29-4; 29-5; 29-8; 29-9; 29-12; 29-13; 29-20; 29-30; 29-35; 29-36; 29-37; 29-38; 29-39; 29-40. None of the documents cited support the claim. At best, one document contains a report that a student deleted Casas's contact information

10.   BISD failed to properly train, instruct, and supervise its employees, including Casas.  *Id*. at 11, 16-18.  BISD knowingly failed to protect Alec from Casas's sexual harassment, assault, and rape.  *Id*. at 20-22.  Through its acts and omissions, BISD deprived Alec of his right to life, liberty, and bodily integrity.  *Id*. at 19-20. BISD's acts and omissions constitute a violation of the Fourteenth Amendment of the United States Constitution, thus making it liable under 42 U.S.C. § 1983.  Dkt. No. 1 at 7-8.  BISD's acts and omissions also constitute a violation of Title IX, which provides a private cause of action for students subjected to sexual harassment at school.  *Id*. at 20-22.[2]

## IV.  Legal Standards

**A.  Federal Rule of Civil Procedure 56.**  The standard applied when ruling on a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure.  FED. R. CIV. P. 56(a).  In pertinent part, Rule 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*., *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same).  Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion

---

after Ramos called him in for questioning, but it does not state that Ramos instructed him to delete Casas's contact information or texts.  Dkt. No. 29-13.

[2]  Plaintiffs state that they are withdrawing their "Tort Claims and Civil Conspiracy Claim." Dkt. No. 29 at 7.  Thus, their claims against BISD are limited to their § 1983 and Title IX claims.  *Id*.

for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

A fact is material if it might affect the outcome of the lawsuit under the governing law.  *Anderson*, 477 U.S. 242, 248.  A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id*.  Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict.  If reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.  *Id*. at 249.

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the resisting party to present affirmative evidence to defeat the motion.  *Anderson*, 477 U.S. 242, 257.  All facts and inferences drawn from those facts must be viewed in the light favorable to the party resisting the motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "The court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).

**B.   Due Process and 42 U.S.C. § 1983**.   Pursuant to the Fourteenth Amendment, no state shall "deprive a person of life, liberty or property without due process of law."  U.S. Const. Amend. XIV.  This right to due process also protects against "state-occasioned damage to a person's bodily integrity[.]"  *Doe v. Taylor*

*Indep. Sch. Dist.*, 15 F.3d 443, 451-52 (5th Cir. 1994) (citing *Shillingford v. Holmes*,

634 F.2d 263, 265 (5th Cir. 1981)).  In relevant part, Section 1983 of Title 42 provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress, except that in any action brought
> against a judicial officer for an act or omission taken in such officer's
> judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  Section 1983 does not create substantive rights.  Instead, it creates

a private right of action to redress violations of federal law, such as the Fourteenth

Amendment, perpetrated by those acting under color of state law.  *Colson v.

Grohman*, 174 F.3d 498, 504 n. 2 (5th Cir. 1999).  A plaintiff seeking § 1983 relief

must show that: (1) the conduct complained of was committed under color of state

law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution

or laws of the United States.  *See Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir.

1990) (citing *Daniel v. Ferguson*, 839 F.2d 1124, 1128 (5th Cir. 1998)).

> The Supreme Court has explained that, according to the traditional
> definition of "acting under color of state law," the defendant in a § 1983
> action must have "exercised power 'possessed by virtue of state law and
> made possible only because the wrongdoer is clothed with the authority
> of state law.'"  *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101
> L.Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326,
> 61 S.Ct. 1031, 85 L. Ed. 1368 (1941)).  In other words, "the deprivation
> must be caused by the exercise of some right or privilege created by the
> [s]tate or by a rule of conduct imposed by the [s]tate or by a person for
> whom the State is responsible." *Lugar v. Edmundson Oil Co.*, 457 U.S.
> 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). . . ."State employment
> is generally sufficient to render the defendant a state actor." *West*, 487
> U.S. at 49.

*Boyter v. Brazos Cnty.*, No. H-09-4132, 2011 WL 1157455, at *7 (S.D. Tex., Mar. 28, 2011).

As the U.S. Constitution does not "guarantee due care on the part of state officials[,] liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *City. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). "Regardless of the theory of liability that a plaintiff is pursuing, in order to state a viable substantive due process claim the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence." *McClendon v. City of Columbia,* 305 F.3d 314, 325 (5th Cir. 2002). Moreover, to prevail, "the plaintiff must show that there was either an official policy or an unofficial custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation." *Duvall v. Dallas Cnty, Tex.*, 631 F.3d 203, 209 (5th Cir. 2011) (citing *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 694 (1978)).

**C. Title IX**. With some exceptions not at issue here, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX provides a private cause of action for students who have been subjected to sexual harassment in school. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 638 (1999). In *Davis*, the Supreme Court of the United States held that funding recipients may be "held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual

knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id*. at 650.

A plaintiff may not recover damages under Title IX pursuant to principles of respondeat superior or constructive notice. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998). "[L]iability under Title IX arises not from the discrimination or harassment itself but from 'an official decision by the [funding] recipient not to remedy the violation.'" *Salazar v. S. San Antonio Indep. Sch. Dist.*, 690 Fed. App'x 853, 858 (5th Cir. 2017) (quoting *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642). *See also Doe v. City of Springtown*, No. 4:19-CV-00166-P-BP, 2019 WL 5685369, at *6 (N.D. Tex. Aug. 26, 2019), *report and recommendation adopted*, No. 4:19-CV-00166-P, 2019 WL 5684492 (N.D. Tex. Nov. 1, 2019) (same).

## V. Discussion

As noted above, Plaintiffs state that they are withdrawing their "Tort Claims and Civil Conspiracy Claim." Dkt. No. 29 at 7. Thus, their claims against BISD are limited to those brought pursuant to 42 U.S.C. § 1983 and Title IX. *Id*. Plaintiffs assert that BISD is liable under Title IX and § 1983 because it knowingly, and with deliberate indifference: (1) failed to properly train, instruct, and supervise its employees, including Casas; (2) failed to protect Alec from Casas's sexual harassment, assault, and statutory rape; (3) failed to properly handle the investigation into

Casas's conduct; and (4) failed to check on Alec's welfare after discovering Casas's abuse.  Dkt. No. 1 at 8-10; Dkt. No. 29 at 11, 16-22.

A. **The Record Evidence**.  The evidence before the Court indicates that BISD first learned about Casas's inappropriate behavior towards Alec on December 14, 2016, when a student reported information about the behavior.  Dkt. No. 29-3 at 2, 6 (containing BISD reports dated December 14, 2016).  BISD placed Casas on administrative leave on December 15, 2016, and directed her to have no further contact with students or other teachers pending the outcome of its investigation.  Dkt. No. 28-9 at 2.

BISD's investigation initially revealed that some students had: (1) observed Casas's inappropriate behavior with Alec; or, (2) observed Casas's inappropriate behavior with one or two other male students; or, (3) heard about Casas's inappropriate behavior; or, (4) been the victim of Casas's inappropriate behavior.  *See, e.g.*, Dkt. No. 29-13 at 2; Dkt. No. 29-14 at 2; Dkt. No. 29-17 at 2; Dkt. No. 29-22 at 3.  BISD's investigation also revealed that one teacher had observed conduct on December 12, 2016, that he did not report.  Dkt. No. 29-12 at 2-3.  Specifically, in his signed, sworn affidavit, Diego Garcia, III, states as follows:

1.  On December 12, 2016, he walked by Casa's classroom and saw that the lights were on, Casas was not at her desk, and the door was wide open.  *Id.* at 2.  Upon entering her classroom, he saw Casas and Alec standing very close to each other

behind a filing cabinet, as if something had just happened, or was about to happen. *Id*. He exclaimed, "What the hell are you doing?" *Id*. Alec responded, "nothing." *Id*.[3]

2. He then backed out of the room and returned to his classroom. *Id*. at 2. He saw Alec leave as he was returning. Five minutes later, Casas went to his classroom and told him that Alec had forced himself on her and that she could not push him off because he was bigger. He informed Casas, "You cannot be doing stuff like that." *Id*. He had not seen Alec forcing himself on Casas, nor had he seen her fighting him off. *Id*. at 2-3. In fact, he had not observed any physical contact between them and stated that he would have intervened and reported the incident if he had *Id*. at 3.

3. In the past, he had observed students sitting at Casas's desk and using her computer. He informed her, as he had in the past, that she should stop allowing students to congregate in her room. *Id*. at 2. He also told her that she should report the incident with Alec to BISD's administration. *Id*. at 3. The next day, he overheard Casas telling "some teachers" that BISD's administration had "called her in" for being "too friendly with the students." *Id*.

During BISD's investigation, another teacher, Mauro R. Lerma, reported that, on December 13, 2016, Casas had informed him that students were circulating rumors that she had been "'flirting' with certain people," and that she was upset because it was not true. Dkt. No. 29-20 at 2 (containing an email from Lerma to HHS

---

[3] Alec testified during his deposition that Garcia saw him and Casas having intercourse. Dkt. No. 29-30 at 10, 69, 23. However, he subsequently clarified that he did not know what Garcia saw because he and Casas were behind a cabinet. *Id*. at 23.

Principal, Dr. Norma Ibarra, dated December 15, 2016).  Lerma advised Casas to speak to BISD's administration.  *Id.*

When confronted by BISD's administration on December 14, 2016, Casas denied the allegations being made against her and stated that her relationship with Alec and all her students was "strictly that of an educator and student."  Dkt. No. 29-15 at 2; *see also* Dkt. No. 29-16 at 2 (containing Casa's statement that she had never "purposely and deliberately" sent "any inappropriate material to any student.").  Initially, Alec admitted that he visited Casas almost everyday and would "pat/massage her."  Dkt. No. 29-3 at 6.  But, he also denied that there was anything "inappropriate" going on between them.  *Id.*

In January of 2017, Alec admitted the inappropriate, sexual nature of Casas's conduct, but stated that they had never had intercourse because BISD's investigation intervened.  Dkt. No. 29-3 at 14-17.  In early 2017, evidence was retrieved from Alec's phone which confirmed that Casas and Alec had exchanged nude photos of themselves and otherwise carried out an inappropriate relationship.  *See* Dkt. Nos. 29-24, 29-32, 29-33, 29-34.  Based on this and other evidence, BISD's Board met on May 2, 2017, found that Casas had violated numerous school policies, and voted to terminate/non-renew her contract.  Dkt. Nos. 28-10, 29-10, 29-11.

BISD's "Recommendation for Termination/Non-Renewal" noted that Casas had violated certain ethical provisions in BISD's employee handbook.  Dkt. No. 28-10.  BISD's employee handbook specifically prohibited the conduct Casas had engaged in with Alec and the two other male students.  Dkt. No. 29-21.

Prior to her inappropriate relationship with Alec, BISD appears to have conducted an informal or incomplete investigation into Casas's conduct in 2014. *See* Dkt. No. 29-25. It appears this investigation was instigated in response to a complaint a student made on or about March 2, 2014. *Id*. at 8. The complaint suggests that Casas may have said some derogatory things to, and about, a female student and otherwise inappropriately embroiled herself in a conflict between that student ("E.G"), her ex-boyfriend ("E.B.), and the ex-boyfriend's new girlfriend ("N.G."). *Id*. at 2-8. According to notes BISD appears to have taken during a conversation with E.G., Casas may have called E.G. a "pathetic girl" who deserved what she was getting. *Id*. at 5. Casas may have also called E.G. a "psycho little girl" and stated that it was her fault that E.B. had cheated on her. *Id*. at 4-5.

The student who appears to have filed the original complaint also accused Casas of favoritism, letting some students skip her class, talking about things not relevant to school, trying too hard, and stating that she did not like E.G. or her "type" of girl. Dkt. No. 29-25 at 8. Another student BISD appears to have questioned denied hearing anything relevant. *Id*. at 6. Casas herself denied making the above-described comments. *Id*. at 3. In her statement regarding the alleged conflict, Casas stated that E.B and N.G. confided in her due to E.G.'s alleged violent threats, and that she advised them to report the matter to BISD's administration. *Id*. at 2-3.

**B. Plaintiffs' Title IX Claims**. A public school district may be liable under Title IX if it has "actual knowledge" of discrimination within its programs and fails to adequately respond. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290; *Doe*

*v. Katy Indep. Sch. Dist.*, No. CV H-17-1060, 2019 WL 6830792, at *6 (S.D. Tex. Dec. 13, 2019) (same).   To prevail, a plaintiff must show that:   "(1) a school district employee with supervisory power over the offending teacher (2) had actual notice of the abuse and (3) responded with deliberate indifference."   *Doe v. Katy Indep. Sch. Dist.*, No. CV H-17-1060, 2019 WL 6830792, at *6 (citations and internal quotations omitted).

A court should not find that an employee had supervisory power unless: (1) the school board invested the employee with the duty to supervise the offending employee; and, (2) the supervising employee had the power to end the abuse.   *A.W. v. Humble Indep. Sch. Dist.,* 25 F. Supp. 3d 973, 983 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015) (citing *Gebser*, 524 U.S. at 280, 118 S.Ct. 1989).   Knowledge of teacher-student harassment by an employee whose authority is limited to reporting the harassment will not expose the school district to Title IX liability.   *Doe,* 2019 WL 6830792, at *6 (citing *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997)).   Most school employees do not have supervisory authority.   *Id.*

The question of whether a school district has actual knowledge is ordinarily a question of fact.   *Doe*, 2019 WL 6830792, at *6 (citing *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000)).   Nevertheless, summary judgment may issue when the plaintiff cannot show knowledge or present a material question of fact on the subject.   *Id.*

> To raise a factual dispute as to actual knowledge, a plaintiff "need not show that the district knew that a particular teacher would abuse a

particular student." [*Rosa H.*, 106 F.3d 648, 659]. It is enough that "the school district failed to act even though it knew that [the teacher] posed a substantial risk of harassing students in general." *Id*. A school district may not be found liable if it shows that it (1) "did not know of the underlying facts indicating a sufficiently substantial danger and that [it was] therefore unaware of a danger," or (2) "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. The test is whether the district had "either actual knowledge of the precise instance of abuse giving rise to the case at hand, or actual knowledge of substantial risk that such abuse would occur." *A.W.*, 25 F. Supp. 3d at 992.

*Id*.

With respect to deliberate indifference, the school district's conduct "must amount to an intentional choice, not merely an unintentionally negligent oversight." *James v. Harris Cnty.*, 577 F.3d 612, 617-18 (5th Cir. 2009) (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992)).

> Deliberate indifference is a "high bar." *E. M. ex rel. J. M. v. Austin Indep. Sch. Dist.*, 770 F. App'x 712, 713 (5th Cir. 2019) (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011)). Negligence or unreasonableness is not enough. *Id*. School districts may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, even if the response is unsuccessful. *Ramos*, 724 F. App'x at 340 (citing *Dallas Indep. Sch. Dist.*, 220 F.3d at 384). What makes a response or a remedial action "reasonable" depends on the facts of each case. *Dallas Indep. Sch. Dist.*, 220 F.3d at 384. When the material facts are undisputed, "[w]hether an official's response to actual knowledge of discrimination amounted to deliberate indifference . . . may appropriately be determined on summary judgment." *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 370 (5th Cir. 2019) (quoting *Dallas Indep. Sch. Dist.*, 220 F.3d at 387).

*Doe*, 2019 WL 6830792, at *7.

Here, Plaintiffs argue that BISD had actual knowledge of Casas's inappropriate behavior towards Alec and two other male students and allowed it to continue, either knowingly, or with deliberate indifference. Dkt. No. 1 at 8-10; Dkt.

No. 29 at 11, 16-22.   However, the record contains no evidence that anyone with supervisory authority at BISD was aware of Casas's conduct prior to December 14, 2016, when Casas's conduct was first reported.   *See* Dkt. No. 29-3.   The very next day, on December 15, 2016, BISD placed Casas on administrative leave and instructed her to have no contact with any student pending the outcome of its investigation.   Dkt. No. 28-9 at 2.

During his deposition, Alec testified that BISD must have known about Casas's conduct before December 14, 2016, through reports from other students and teachers. Dkt. No. 29-30 at 21, 23, 32.   When pressed, however, he testified that he had no evidence to support this claim.   *Id*.   This is consistent with the Court's own review of the record evidence, which reveals that all the reports to BISD concerning Casas's inappropriate conduct with Alex, or the two other male students "D.R." and "G.C." were dated December 14, 2016, or later.   *See* Dkt. No. 29-3; Dkt. No. 29-12; Dkt. No. 29-13 at 2; Dkt. No. 29-14 at 2; Dkt. No. 29-17 at 2; Dkt. No. 29-18 at 2; Dkt. No. 29-19 at 2; Dkt. No. 29-20 at 2; Dkt. No. 29-22 at 2-3; Dkt. No. 29-23 at 2-3; Dkt. No. 29-27 at 2; Dkt. No. 29-28 at 2.[4]

Further, Plaintiffs have not shown that the information obtained by Diego Garcia on December 12, 2016, or Mauro Lerma on December 13, 2016, equate to knowledge on the part of BISD because Plaintiffs have not shown that Garcia or Lerma had supervisory authority.   Relatedly, Plaintiffs have not shown that BISD

---

[4] The sole exception here is a student report which is not dated. Dkt. No. 29-26 at 2. Because the report is not dated, it is not evidence that BISD knew of Casas's behavior prior to December 14, 2016.

was aware of a substantial risk that Casas would sexually harass, assault, or statutorily rape any minor students. Plaintiffs argue that BISD's investigation into Casa's conduct in 2014 put it on notice of the substantial risk that Casas could engage in this type of conduct. However, the evidence Plaintiffs have produced merely shows that Casas may have posed a risk of directing sexist, derogatory comments towards female students and otherwise acting immaturely and unprofessionally. This evidence was insufficient to put BISD on notice of a substantial risk that Casas would behave in sexually inappropriate way with any of its male student(s). *See Doe*, 2019 WL 6830792, at 8 ("Vague allegations that do not include sexual harassment do not put a school district on notice of that risk."); *Moreno v. McAllen Indep. Sch. Dist.*, No. 7:15-CV-162, 2016 WL 3198159, at *13 (S.D. Tex. June 9, 2016) (allegations regarding employee's "bizarre behavior," which included blocking a student against a wall, and standing too close, were insufficient to provide actual notice that employee posed a substantial risk of sexual abuse or harassment); *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 994 (allegations that a teacher and student had an "improper" relationship were insufficient to show actual notice of sexual abuse when allegations did not specify the relationship was sexual); *Doe v. Northside Indep. Sch. Dist.*, 884 F. Supp. 2d 485, 497 (W.D. Tex. 2012) (allegations of improper behavior including hugging, chest bumps, and hip bumps were insufficient to provide actual notice that teacher posed a risk of sexual assault).

Next, rather than acting with deliberate indifference, BISD placed Casas on administrative leave and directed her not to contact any students within a day of

receiving information of Casas's wrongful conduct.  Dkt. No. 28-9 at 2.  Plaintiffs assert that BISD's failure to train and supervise its employees caused their injuries. However, they have not produced evidence creating a material question of fact on this issue.  BISD's policies and employee handbook specifically prohibited Casas's inappropriate conduct and directed employees to report such conduct.  Dkt. Nos. 29-21, 29-39.  There is no evidence in the record to support a finding that BISD failed to provide Casas or any of its employees with its policies or handbook.  To the contrary, BISD's employee handbook specifically states that its policies are distributed annually to employees and charges each employee with the duty to be aware of the policies.  Dkt. No. 29-21 at 2.

Plaintiffs state that, regardless of its official policies, there was a pattern and practice of allowing teachers to sexually harass and assault students at BISD.  Dkt. No. 1 at 8; Dkt. No. 29 at 11.  In their discovery responses, Plaintiffs name four former teachers, in addition to Casas, whom they state where involved in inappropriate relationships with students at various points over a ten-year period.  Dkt. No. 29-33 at 6.  However, Plaintiffs have presented no evidence to support their allegations, nor have they presented any evidence indicating that BISD was aware of these alleged improper relationships.  Further, in his deposition, Alec admitted he and Guerrero had no evidence to support their pattern-and-practice claims.  Dkt. No. 28-2 at 6; Dkt. No 29-30 at 18, 23, 32.

On a related note, both Plaintiffs suggest that they are entitled to recover as a result of BISD's alleged mishandling of the investigation into Casas's conduct.  Dkt.

Dkt. No. 1 at 4-8; Dkt. No. 29 at 9-11, 15, 22.  Plaintiffs contend that BISD: (1) treated Alec as if he had broken the law; (2) subjected Alec to questioning without legal representation; (3) did not reach out to Alec to check on his welfare; (4) took, and did not return, Alec's phone; (5) failed to respond to Guerrero's requests for information about its investigation or Casas's punishment; and (6) did not timely report Casas's conduct to child protective services.  *Id*.  Even if the Court were to assume the truth of these allegations,[5] Plaintiff has not shown that BISD's alleged conduct here is actionable under Title IX, or § 1983 for that matter.  For the reasons discussed in this report, Plaintiffs have also failed to produce evidence that could support a finding that this conduct exceeded mere negligence or constituted deliberate indifference.

Further, Guerrero is not entitled to recover because she does not have standing.  First, Guerrero does not have standing to recover on Alec's behalf as he was no longer a minor when Plaintiffs filed suit in November of 2018.  *See* Dkt. No. 1; Dkt. No. 29-3 at 2, 6 (listing Alec's date of birth); *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 985-86 (discussing case law and noting that the mother of student, A.W., could not "assert claims as next friend of A.W. because . . . A.W. was not a minor when [the] action was filed.").  Second, Guerrero lacks standing to recover on her own behalf because she has not shown that BISD violated her Title IX rights.  As the Fifth Circuit has explained:

> We conclude that [the mother] does not have standing to assert a personal claim under title IX.  It is undisputed that she has standing, as next friend, to assert the claims of her [minor] daughters, but nothing

---

[5]  Plaintiffs have not produced evidence that BISD forced Alec to answer questions without representation.  To the contrary, in his deposition Alec testified that he refused to respond to questioning because his mother and attorney were not present. Dkt. No. 29-30 at 8, 19.

in the statutory language provides her with a personal claim under title IX. Even assuming that title IX protects persons other than students and employees, [the mother] has failed to assert that she was excluded from participation, denied the benefits of, or subjected to discrimination under any education program or activity. Absent such a claim, the plain language of title IX does not support a cause of action by [the mother].

*Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 06, 1010 n. 4 (5th Cir. 1996), *disapproved on other grounds by Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 637–38 (1999); *see also Moreno v. McAllen Indep. Sch. Dist.*, No. 7:15-CV-162, 2016 WL 1258410, at *8–9 (same); *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 985 (same).

Plaintiffs have produced no evidence creating a material question of fact under Title IX. BISD's request for summary judgment on these claims should be granted.

**C. Plaintiffs' § 1983 Claims.** The Fourteenth Amendment recognizes a public-school student's right to bodily integrity; and, § 1983 makes the violation of this right by a municipal employee actionable. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450. However, "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). To present a viable substantive due process claim under § 1983, Plaintiffs must show that BISD "acted with culpability beyond mere negligence." *McClendon v. City of Columbia,* 305 F.3d 314, 325. Further, Plaintiffs "must show that there was either an official policy or an unofficial custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation." *Duvall v. Dallas Cnty, Tex.*, 631 F.3d 203, 209 (citing *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 694)).

For the reasons provided above, BISD did not have actual knowledge of Casas's conduct, or the risk she posed, until December 14, 2016, when a student reported her behavior to BISD's principal.   BISD opened an investigation and interviewed witnesses that same day.  The following day, and despite the denials of Casas and Alec, BISD placed Casas on administrative leave and directed her to have no further contact with students pending the outcome of its investigation.  Subsequently, BISD's board voted not to renew her contract.

Plaintiffs have not shown that a material question of fact exists with respect to their § 1983 claims.  First, they have not produced evidence indicating that BISD "acted with culpability beyond mere negligence."  *See McClendon v. City of Columbia,* 305 F.3d 314, 325.  Second, they have failed to produce evidence showing "that there was either an official policy or an unofficial custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation."  *See Duvall v. Dallas Cnty, Tex.,* 631 F.3d 203, 209 (citing *Monell v. Dep't of Soc. Serv. of City of New York,* 436 U.S. 658, 694)).  As noted above, Plaintiffs state that there was a pattern and practice of allowing teachers to sexually harass and assault students at BISD. Dkt. No. 29 at 11.  In their discovery responses, Plaintiffs name four former teachers, in addition to Casas, whom they state where involved in inappropriate relationships with students at various points over a ten-year period.  Dkt. No. 29-33 at 6.  However, Plaintiffs have presented no evidence to support their allegations here, nor have they presented any evidence indicating that BISD was aware of these alleged improper

relationships.  Further, in his deposition, Alec admitted that he had no evidence to support this claim.  Dkt. No. 28-2 at 6; Dkt. No 29-30 at 18, 23, 32.

BISD's policies and employee handbook specifically prohibited Casas's inappropriate conduct and directed employees to report such conduct.  Dkt. No. 29-21, 29-39.  There is no evidence in the record to support a finding that BISD did not provide Casas or its other employees with the handbook.  Based on the evidence presented, it appears that BISD might have handled the investigation, and its communications, better.  Nevertheless, for all the reasons provided above, Plaintiffs have produced no evidence creating a material question of fact under § 1983.  BISD's request for summary judgment on these claims should be granted.

## VI.  Recommendation

It is recommended that the Court **GRANT** BISD's Motion for Summary Judgment (Dkt. No. 28) and **DIRECT** the Clerk of Court to **CLOSE** this case.

## VII.  Notice to the Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been

served with notice that such consequences will result from a failure to object.

*Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** on this 5th day of May, 2020.

_____

**Ignacio Torteya III**
**United States Magistrate Judge**